IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10cv21

| MIKE DUFFY, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | ORDER |
|  | ) |  |
| BELK INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

This matter is before the Court upon the Defendant's Motion for Summary Judgment [Dkt. #33]. For the following reasons, the Defendant's Motion for Summary Judgment is **GRANTED.**

**I. FACTS**

Plaintiff Mike Duffy ("Duffy") filed this lawsuit against his former employer, Belk, Inc. ("Belk"), alleging age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. Duffy worked as the Director of Customer Relationship Management ("Director CRM") from August 2004 until January 2009, at which time his position was eliminated. At the time he lost his job Duffy was 61 years old. As Belk's sole Director CRM, Duffy was responsible for managing Belk's direct mail marketing efforts. He reported to Senior Vice President Paul Michelle ("Michelle"). Michelle reported to Kathy Bufano

1

("Bufano"), who was Belk's President of Merchandising and Marketing. Bufano, in turn, reported to McKay Belk, President and Chief Merchandising Officer.

Beginning in the summer of 2008, Belk experienced a severe decline in sales. In response, Belk's executive management decided to take significant steps to immediately reduce expenses through, among other things, job elimination and consolidation of responsibilities. Bufano led the effort to reorganize her department, of which Duffy was a member. Bufano was responsible for preparing recommendations for making necessary job consolidations, job eliminations, and other cost saving steps to meet expense reduction goals. Bufano proposed to combine "customer research" and "customer relationship management" responsibilities under a single Vice President level manager. At the time there were two separate positions for these functions: Duffy, as Director CRM, and Lis Cravens, Vice President of Marketing and Customer Research (age 41). Based on her business judgment, Bufano recommended that the two functions be combined under Lis Cravens, and that the Director CRM position be eliminated. Bufano testified that she did not consider, nor was she aware of, employees' ages in making her recommendations.

In addition to recommending that Duffy's position be eliminated, Bufano also recommended combining Michelle's responsibilities with one of the Executive Vice President positions held by Jon Pollack ("Pollack"), resulting in the elimination of Michelle's job. Pollack was older than Michelle. Bufano's recommendations were approved by McKay Belk and implemented in January of 2009. Of the 72 employees in the marketing division of Belk, only three were terminated: Duffy, age 61, Michelle, age 51, and Kathy Sisler, age 61.

Duffy was informed that his position was being eliminated on January 7, 2009. He was offered a severance package, which he rejected. Duffy met with Belk's Human Resources Vice President Jeff O'Hanlon and expressed his displeasure with the amount of his severance. On January 23, Duffy met with Steve Pernotto ("Pernotto"), the Executive Vice President of Human Resources, to discuss his severance package. Pernotto offered to help explore whether there were any other opportunities within Belk in which Duffy might be interested. Pernotto made this offer even though Belk had no personnel policy or practice requiring Human Resources to automatically consider employees whose jobs are eliminated for other available vacancies. Duffy made it clear that while he was open to accepting another position within Belk, he expected a salary equal to his Director CRM position, which was $160,000.00 per year. Pernotto was able to approve a larger severance package for Duffy, which Duffy ultimately rejected.

Human Resources did search for available vacancies within Belk that Duffy might be interested in, but there were no vacancies that met Duffy's salary requirements. Even so, Human Resources discussed with Duffy available lower level vacancies that paid only in the $90,000 to $100,000 range. Duffy declined to pursue these positions.

Duffy claims that there were two positions for which he should have been considered and was not: a position in the e-Commerce Department and a position as Vice President in the Sales Promotion and Marketing Department. Both positions were filled by women who were significantly younger than Duffy.

In December of 2008, prior to Duffy's job elimination, Carolyn Hartman ("Hartman") was re-assigned from her position as Vice President of Advertising Planning and Analysis to Director of Email Content in Belk's e-Commerce Department. Hartman was re-assigned

because she was involved in a serious romantic relationship with Pollack. Though neither supervised the other in 2008, because of management's late 2008 decision regarding Pollack's expanded management responsibilities which would include the department where Hartman worked, Bufano decided it was best for Belk and for Hartman to have her re-assigned to a position where she would not be supervised by Pollack. Belk had a written personnel policy that prohibited those who were married or in a romantic relationship to supervise one another. Hartman accepted a pay cut (from $160,000 to $130,000) as well as a title reduction to take the new assignment. The change in her assignment was not part of Belk's job consolidations or other cost saving recommendations in late 2008.

Duffy also complains of the selection and promotion of Sue Curley ("Curley") to replace Hartman as Vice President in the Sales and Marketing Department on January 7, 2009. Bufano required "merchant" experience for this position and Curley was selected based on her significant career experience as a merchant prior to and during her Belk employment. Moreover, unlike Curley, Duffy was never identified by executive management as either "High Potential" or "Promotable" under Belk's succession planning process.[1] Curley was selected for and offered the job several weeks before Pernotto first addressed Plaintiff's possible interest in being considered for available vacancies.

Duffy filed his Complaint with this court on January 19, 2010, alleging Belk discriminated against him because of his age by eliminating his job as Director CRM, by failing to promote

---

[1] An employee who has been identified as "High Potential" is someone senior management has identified as having qualifications and experience to be promoted up two more levels within the Company. A "Promotable" employee is someone senior management has identified as having qualifications and experience to be promoted up to the next "higher" level of responsibility above his or her then current position. (O'Hanlon Aff. ¶ 6). Curley was previously identified as a "High Potential" employee.

4

him to the Vice President position awarded to Curley, and by failing to assign him to the new e-Commerce position awarded to Hartman.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); *see also* Bouchat v. Balt. Ravens Football Club, 346 F.3d 514 (4th Cir. 2003). The Supreme Court has observed that, "this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A fact is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

When reviewing summary judgment motions courts are required to view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 325. "Once the moving party has met that burden, the nonmoving party must come forward and demonstrate that such an issue does, in fact, exist." Bouchat, 346 F.3d at 522.

## III. DISCUSSION

In an ADEA case, the plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343, 2352 (2009). In other words, age must be the reason that the employer decided to act. Id. at 2350.

A plaintiff can demonstrate age discrimination by direct or circumstantial evidence that age discrimination motivated the employer's decision. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004). Alternatively, a plaintiff may establish his claim by the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), whereby the plaintiff must first satisfy the elements of a *prima facie* case. Id. at 285.

If a plaintiff's *prima facie* case can be established, the burden of production shifts to the employer who may then articulate a legitimate non-discriminatory reason for the adverse action taken against the employee. Hill, 354 F.3d at 285. Finally, the plaintiff has the burden of proving by a preponderance of the evidence that the proffered reasons are pre-textual and that the plaintiff was in fact the victim of intentional discrimination. Id.

Finally, it is not the court's job to second guess an employer's business judgment. See EEOC v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992) ("It is not for this court or any other governmental agency to direct the business practices of any company.") The court does not "sit as a 'super-personnel department weighing the prudence of employment decisions' made by the defendants." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005) (quoting DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998)).

A. **Elimination Of the Director CRM Position**

As Duffy has no direct evidence of a discriminatory motive, he must proceed under the McDonnell Douglas framework. In order to establish a *prima facie* case of age discrimination in a Reduction-In-Force ("RIF") context, Duffy has to establish: (1) that he was in a protected class, (2) he was discharged, (3) he was performing his job at a level that met the employer's expectations, and (4) that his employer did not treat the protected status neutrally, or there were other circumstances giving rise to an inference of discrimination. Dugan v. Albemarle County Sch. Bd., 293 F.3d 716, 720-21 (4th Cir. 2002)

The only element of the prima facie case that is in dispute is the fourth element. Plaintiff fails to introduce any evidence that Bufano even knew his age, let alone relied on his or anyone else's age in her decision to eliminate the Director CRM position. Instead, Duffy relies on purported "statistical evidence," citing that of the 72 employees in marketing, the three employees who lost their jobs were between the ages of 52 and 62. Duffy's use of statistical evidence in order to create a *prima facie* case is unpersuasive. Duffy does not satisfactorily compare the ages of the employees that were fired with other employees in the department to create any reasonable inference of discrimination. Duffy argues that no person outside the protected age group suffered adverse employment action. However many employees residing within the protected age group were spared as well. For example, Michelle was replaced by Pollack, who was two years older than Michelle. The case law relied on by Duffy[2] is distinguishable because the plaintiffs in those cases presented other evidence of discrimination in addition to a statistical sample.

---

[2] International Broth. Of Teamsters v. United States, 431 U.S. 324 (1997); Cicero v. Borg-Warner Automotive, Inc., 280 F.3d 579 (6th Cir. 2002).

Accordingly, the court finds that Duffy has failed to establish a *prima facie* case under McDonnell Douglas. Even if he was able to establish a *prima facie* case, however, Belk has articulated a legitimate, non-discriminatory reason for its employment decision: Duffy's job was eliminated as part of a reduction-in-force. Bufano proposed a consolidation of Duffy's job and Craven's job because in her business judgment, the two jobs involved "like functions." Bufano considered Cravens better qualified for the "combined" position based on Craven's success at Belk and her customer research and "brand manager" experience. In order to meet his burden of showing pretext, Duffy must demonstrate that Belk's decisions are "a lie, specifically a phony reason." Millbrook v. IBP, Inc., 280 F.3d 1169, 1175 (7th Cir. 2002). Pretext is not shown through "minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant" to the employer's explanation. Hux v. City of Newport News, Va., 451 F.3d 311, 315 (4th Cir. 2006).

Ultimately, the proper focus in analyzing pretext is on the decisionmaker's belief. See Holland v. Washington Homes, Inc., 487 F.3d 208, 215 (4th Cir. 2007). In other words, Plaintiff must demonstrate that Bufano did not actually believe that the combined position should be created based on her "like tasks" criteria and that Cravens was the best fit for that position. Duffy's attempts to show pretext mainly amount to his disagreement with the wisdom of Bufano's business judgment and his belief that he was better qualified to assume the "combined" position. This simply does not satisfy his burden. It is the perception of the decisionmaker that is relevant, not Duffy's assessment. See Evans v. Techs. Applications and Serv. Co., 80 F.3d 955, 960-61 (4th Cir. 1996).

Bufano, charged with leading the organizational change for this department, relied on her business judgment when considering the best way to continue the functions supervised by Duffy. It is not for this court to decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Hawkins v. Pepsico, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (quoting DeJarnette, 133 F.3d at 299). There is simply no evidence from which a reasonable factfinder could conclude that Belk's explanation for eliminating the Director CRM position was a mere pretext to mask age discrimination.

B. **E-Commerce Position**

Duffy also challenges Belk's failure to assign him to a new, lower paying job in its e-Commerce Department which was assigned to Hartman. Notably, this position was assigned to Hartman in December of 2008, prior to Duffy's job elimination and prior to the time he expressed an interest in another position with Belk. Implicit in Duffy's claim is an argument that Belk had a "duty" or personnel policy that somehow required Belk to assign him to an alternate job assignment after the decision to eliminate his position. Belk had no such policy or practice. Moreover, the e-Commerce job's salary level did not meet Duffy's expressed minimum requirement. Duffy cannot establish a *prima facie* case of discrimination.

Even if Duffy could satisfy his *prima facie* burdens for the e-Commerce job, Belk proffered a legitimate, non-discriminatory reason for transferring Hartman to the position: to avoid a manager/employee conflict of interest situation involving Pollack, an employee with whom Hartman had a romantic relationship. Duffy offers no evidence that this explanation was pretextual.

9

Instead, Duffy questions the nature of the decisions and charges that they are pretextual because Duffy was not considered for the positions when they were open. Duffy also contends that he should have been considered for the e-Commerce position based on his opinion of *his own* qualifications. Belk contends that Hartman was retained because of her experience, performance and having been identified as a "High Potential" performer. Duffy, in response, relies primarily upon his own assertions that he was a better-qualified candidate for the position. Duffy's opinion and "perception of his own experience, performance, and skills is not relevant," to the current analysis. Wright v. N.C. Dep't of Health and Human Svcs., 405 F. Supp. 2d 631, 636 (E.D.N.C. 2005).

The decision to offer Hartman the position was made prior to Duffy's termination. There is no indication that there was deception of any kind to avoid offering the job to Duffy. Moreover, when Duffy was offered opportunities for continued employment within the company he declined due to insufficient pay. Accordingly it is unclear that had Duffy been offered the e-Commerce position he would have availed himself of the opportunity.

### c. Vice-President Position

Plaintiff's final claims of age discrimination rest in his inability to obtain the Vice President position that was vacated by Hartman's transfer and subsequently filled by Curley prior to Duffy's termination. In a failure to promote claim, a plaintiff must establish that he is: 1) a member of a protected group, 2) applied for the position, 3) was qualified for the position, and 4) was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005). Duffy can only satisfy the first element of a *prima facie* case.

Moreover, Belk has established a legitimate explanation for the selection of Curley for this position: her extensive "merchant" experience and her prior selection as a "High Potential" employee for promotion. Although Duffy argues that he was better qualified for the position, it is the perception of the decisionmaker that counts, not Duffy's own perception of his experience, performance and skills. See Evans, 80 F.3d at 960-61.

### IV. Conclusion

Duffy's age discrimination claims must fail. He cannot establish a *prima facie* case for any of his alleged adverse employment actions. Moreover, undisputed facts demonstrate not only Belk's business judgment for its decision to eliminate the Director CRM position, but also its honest explanations for the assignment of Hartman to the e-Commerce position and the promotion of Curley into a Vice-President position. Duffy fails to meet his burden of showing pretext, and most importantly, cannot raise a genuine issue of material fact that his age was the "but for" reason for Belk's management decisions. Accordingly,

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is hereby GRANTED.

Signed: June 21, 2011

Graham C. Mullen
United States District Judge